| | |
|---|---|
| Case No. CV 18-8662-MWF (SSx) | Date: December 12, 2018 |
| Title: Carlos Koreisz v. On Q Financial, Inc. | |

Present: The Honorable **MICHAEL W. FITZGERALD, U.S. District Judge**

| Deputy Clerk: | Court Reporter: |
|---|---|
| Rita Sanchez | Not Reported |

| Attorneys Present for Plaintiff: | Attorneys Present for Defendant: |
|---|---|
| None Present | None Present |

**Proceedings (In Chambers):** ORDER RE: PLAINTIFF CARLOS KOREISZ'S MOTION TO REMAND CASE TO VENTURA COUNTY [11]

Before the Court is Plaintiff Carlos Koreisz's Motion to Remand Case to Ventura County (the "Motion"), filed on November 6, 2018. (Docket No. 11). Defendant On Q Financial, Inc. ("On Q Financial") filed an Opposition on November 19, 2018. (Docket No. 14). Plaintiff filed a late Reply on November 30, 2018. (Docket No. 17). The Court has read and considered the papers submitted on the Motion and held a hearing on December 10, 2018.

For the reasons discussed below, the Motion is **GRANTED**. On Q Financial has not plausibly established, by a preponderance of the evidence, that the amount in controversy exceeds the $5,000,000 jurisdictional requirement of the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d).

## I. BACKGROUND

On August 31, 2018, Plaintiff, a former employee of On Q Financial, an Arizona corporation with its principle place of business in Ventura County, commenced a putative class action in the Ventura County Superior Court asserting eight wage-and-hour-related claims for relief under California law: (1) unpaid overtime; (2) unpaid meal period premiums; (3) unpaid rest period premiums; (4) unpaid minimum wage; (5) final wages not timely paid; (6) non-compliant wage statements; (7) waiting time penalties; and (8) violation of California's Unfair Competition Law ("UCL"), Cal. Bus.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 18-8662-MWF (SSx)                    Date:  December 12, 2018
Title:    Carlos Koreisz v. On Q Financial, Inc.

& Profs. Code § 17200 *et seq*.  (*See generally* Notice of Removal ("NoR"), Ex. 1 ("Complaint") (Docket No. 1-1)).

In his Complaint, Plaintiff proposes the following class definition:

> All current and former hourly-paid or non-exempt employees employed by [On Q Financial] within the State of California at any time during the period from four years preceding the filing of this Complaint to final judgment.

(*Id.* ¶ 12).  Plaintiff alleges that "[t]he class is estimated to be greater than fifty (50) individuals and the identity of such membership is readily ascertainable by inspection of [On Q Financial's] employment records."  (*Id.* ¶ 14).

The primary focus of Plaintiff's Complaint is On Q Financial's "pattern and practice" of not keeping complete and accurate payroll records, depriving Plaintiff and the proposed class members compensation for all hours worked, rest breaks, and miss meal periods.  (*See id.* ¶¶ 16–19, 32–40).  Plaintiff does not specify the amount of the putative class members' damages in his Complaint.

On October 9, 2018, On Q Financial removed the action, invoking this Court's jurisdiction pursuant to CAFA.  (NoR ¶ 8).

## II.  DISCUSSION

### A.  Jurisdiction under CAFA

Under CAFA, the Court has "original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which" there is minimal diversity.  § 1332(d).

"Congress designed the terms of CAFA specifically to permit a defendant to remove certain class or mass actions into federal court . . . [and] intended CAFA to be interpreted expansively."  *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 18-8662-MWF (SSx)                    Date:  December 12, 2018
Title:    Carlos Koreisz v. On Q Financial, Inc.

2015).  In a notice of removal, a defendant need only plausibly allege that these prerequisites are met.  *Dart Cherokee Basin Operating Co. v. Owens*, 135 S. Ct. 547, 553 (2014).  Once confronted with a motion to remand, however, the removing defendant bears the burden of establishing jurisdiction by a preponderance of the evidence.  *Id*. at 553–54; *Ibarra*, 775 F.3d at 1197–98.

Relevant here, where a plaintiff moves to remand based upon the amount in controversy, both "parties may submit evidence outside the complaint, including affidavits or declarations, or other 'summary-judgment type evidence relevant to the amount in controversy at the time of removal.'"  *Ibarra*, 775 F.3d at 1199–1200.  "Under this system, CAFA's requirements are to be tested by consideration of real evidence and the reality of what is at stake in the litigation, using reasonable assumptions underlying the defendant's theory of damages exposure."  *Id*. at 1198.  A removing defendant bears the burden of convincing the district court that the $5 million CAFA threshold is met, and the defendant's "assumptions cannot be pulled out of thin air but need some reasonable ground underlying them."  *Id.* at 1199.

## B.  Amount in Controversy

Here, the parties dispute only the "amount in controversy" element of CAFA jurisdiction.  (Mot. at 2; Opp. at 2–3).

Plaintiff first argues that On Q Financial has asserted, "without providing a single supporting business record," that 198 class members worked a total of 16,178 workweeks and earned an average hourly wage of $16.60.  (Mot. at 5).  Plaintiff contends that the only support is the declaration of On Q Financial's Human Resources Manager, Joselinne Spertina, which "vaguely referenc[es] which records were reviewed in order to determine the hours worked per day, days worked per week, and total weeks worked."  (*Id.* at 5–6; *see also* Declaration of Joselinne Spertina on October 9, 2018 ("Spertina Decl. I") (Docket No. 3)).

On Q Financial argues, and the Court agrees, that Ms. Spertina's declaration can be sufficient to support removal.  (Opp. at 4–5).  There is no requirement for On Q

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 18-8662-MWF (SSx)                    Date:  December 12, 2018
Title:    Carlos Koreisz v. On Q Financial, Inc.

Financial to provide specific underlying business records as contemplated by Plaintiff. *See Muniz v. Pilot Travel Ctrs., LLC*, No. 07-cv-0325-FCD, 2007 WL 1302504, at *7 (E.D. Cal. May 1, 2007) ("There is no obligation by defendant to support removal with production of extensive business records to prove or disprove liability and/or damages with respect to plaintiff or the putative class members at this premature (pre-certification) stage of the litigation.").

Plaintiff next argues that the Court should remand the case because On Q Financial "failed to prove by a preponderance of the evidence that the amount in controversy exceeds [$5,000,000]."  (Mot. at 2).  In response, On Q Financial submits a new declaration by Ms. Spertina and a spreadsheet of detailed calculations, and based upon these documents, On Q Financial calculates that the amount in controversy ranges from $6,166,079 to $12,332,186.  (Opp. at 18; Declaration of Joselinne Spertina on November 19, 2018 ("Spertina Decl. II") (Docket No. 14-1)).

Plaintiff then argues that On Q Financial's estimate of the amount in controversy is "inflated and speculative" because it applies violation rates of 50% to 100% to Plaintiff's causes of action without justifying why such violation rates should be used. (Reply at 3–4).  Plaintiff contends that his "pattern and practice" allegations do not support any particular violation rate.  (*Id.*).

The Court will address, in turn, each figure that comprises the amount in controversy that the parties dispute.

### 1.     Unpaid Overtime (Claim One)

In the Complaint, Plaintiff alleges that "[a]s a pattern and practice, during the relevant time period set forth herein, [On Q Financial] failed to pay overtime wages to Plaintiff and other class members for all hours worked [which were] more than eight (8) hours per day and/or forty (40) hours per week without overtime compensation." (Compl. ¶ 34).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 18-8662-MWF (SSx)                Date:  December 12, 2018
Title:    Carlos Koreisz v. On Q Financial, Inc.

Based upon this allegation, On Q Financial argues that there is "no limit on the number of purported class members who were not paid for all hours worked" and estimates that all purported class members "were not paid for at least one hour of overtime per day." (Opp. at 7). On Q Financial estimates that the unpaid overtime amount is reasonably calculated at $5,926,467, the product of each employee's regular rate of pay times ten hours of unpaid overtime per pay period times the number of pay periods the class members worked times the 1.5 overtime premium. (*Id.* at 9). On Q Financial also argues that even if a more conservative 50% violation rate is used (or five hours of unpaid overtime for each pay period), then the amount in controversy is still $2,963,233. (*Id.*).

Plaintiff disputes both totals, arguing that On Q Financial made "unsupported assumptions about the number of unpaid overtime hours worked" and failed to justify its violation rates. (Reply at 5–7). Plaintiff offers smaller estimates of unpaid overtime, $402,832 to $1,208,496, calculated by the product of the average hourly wage (or $16.60) times one or three hours of unpaid overtime per week (or two to six hours of unpaid overtime per pay period) times the total number of workweeks the class members worked (or 16,178) times the 1.5 overtime premium. (*Id.* at 8).

Notably, Plaintiff's estimates use the average hourly wage (or $16.60) while On Q Financial's use each employee's regular rate of pay. If the average hourly wage is used, as On Q Financial originally did in its Notice of Removal, then the total is between $1,007,080 (assuming 50% violation) and $2,014,161 (assuming 100% violation). (*See* NoR ¶ 35). On Q Financial has not explained why it has changed from using the average hourly wage to the employee's regular rate of pay. For now, the Court will disregard the different hourly wage used by the parties and will address the difference at the end. *See infra*.

The Court concludes that Plaintiff's estimate is significantly more reasonable for two reasons:

***First***, as to the violation rate, the Court agrees that On Q Financial's estimate is unsupported, as On Q Financial bears the burden to show that the application of 50%

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 18-8662-MWF (SSx)                    Date:  December 12, 2018
Title:    Carlos Koreisz v. On Q Financial, Inc.

to 100% violation rates is "based upon reasonable assumptions." *See Ibarra*, 775 F.3d at 1119.  The Ninth Circuit has made clear that "a 'pattern and practice' of doing something does not necessarily mean *always* doing something." *Id.* at 1198–99; *see also Basile v. Aaron Bros., Inc.*, No. 17-cv-485-L, 2018 WL 655360, at *2 (S.D. Cal. Feb. 1, 2018) (finding that while the plaintiff's pattern and practice allegations indicate that the "violations were regular," such allegations "do not speak to their frequency, and are therefore insufficient to support the assumption of any particular rate violation.").

Perhaps as a tacit acknowledgment that using 100% would not be reasonable, On Q Financial assumes a 50% violation rate.  But neither of Ms. Spertina's declarations nor On Q Financial's Opposition offers any reason "grounded in real evidence" as to why a 50% violation rate is appropriate.  *See id.* at 1198–99.  The only possible explanation that the Court can discern for the selection of 50% is that it is sufficient to yield an amount in controversy that exceeds $5 million.

The Court is particularly persuaded by the reasoning in *Sanders v. Old Dominion Freight Line, Inc.*, a case cited by both parties:

> [W]ithout evidence to support [a specific] violation rate, the use of a 50% violation rate (or virtually any violation rate for that matter) is completely arbitrary and ***little more than speculation and conjecture***.  A defendant's assumption of a violation rate sufficient to put the total amount in controversy over $5 million is not reasonable simply because the complaint does not specify a particular violation rate.  It would be just as reasonable (if not more reasonable) to use a 25% violation rate here, which would drop the total amount in controversy here to less than $5 million.

*See* No. 16-cv-2837-CAB, 2017 WL 5973566, at *4 (S.D. Cal. Feb. 2, 2017) (emphasis added) (granting motion to remand where "it is impossible" for the court to decide if the amount in controversy requirement has been met since the "use of either a 25% violation rate or a 50% violation rate would at a minimum be equally reasonable (or

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 18-8662-MWF (SSx)                    Date:  December 12, 2018
Title:    Carlos Koreisz v. On Q Financial, Inc.

equally unreasonable)"). On Q Financial's assumption appears to be "pulled out of thin air" with no "reasonable ground underlying [it]." *Ibarra*, 775 F.3d at 1199.

*Second*, as to the number of hours of unpaid overtime, the Court is even more concerned as to how On Q Financial has reached its estimate. On Q Financial notes as follows:

> While [On Q Financial] disputes Plaintiff's allegations, these unlimited allegations, which must be accepted as true when analyzing the amount in controversy, permit [On Q Financial] to reasonably estimate that all purported class members were not paid for at least one hour of overtime per day (***30 minutes for alleged unpaid meal periods, 20 minutes for two alleged unpaid rest breaks, and 10 minutes of other alleged off-the-clock time***) when calculating the amount in controversy.

(Opp. at 7) (emphasis added). On Q Financial's estimate, of course, would double count the time an employee worked through meal and rest breaks in estimating that employee's unpaid overtime. On Q Financial has not offered any other reason why an hour of unpaid overtime per day is appropriate.

At the hearing, On Q Financial argued that a 100% violation rate is justified because Plaintiff's Complaint alleges wage abuse and a scheme perpetrated by On Q Financial with no limitations or qualifications. Only one instance of either "abuse" or "scheme" appears in the Complaint, as follows:

> Plaintiff is informed and believes, and based thereon alleges, that Defendants engaged in a pattern and practice of wage *abuse* against their hourly-paid or non-exempt employees within the State of California. This *scheme* involved, inter alia, failing to pay them for all hours worked, missed meal periods, and missed rest breaks in violation of California law.

(Compl. ¶ 24) (emphasis added). On Q Financial's argument would be much more persuasive if the Court ignores other allegations in the Complaint. But contrary to On

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No. CV 18-8662-MWF (SSx)						Date: December 12, 2018
Title:		Carlos Koreisz v. On Q Financial, Inc.

Q Financial's contention, Plaintiff includes many other limitations and qualifications that suggest a violation rate of 100% is not appropriate.

For instance, Plaintiff alleges that, as a pattern and practice, On Q Financial failed to pay "at least minimum wages for *all* hours worked" and provide the "requisite uninterrupted and timely meal and rest periods." (*Id.* ¶¶ 35–36). As one court notes, the "difference between 'any' and 'all' is material" because, like here, "whereas the allegation that Defendants did not pay for *any* overtime would support a 100% violation rate, the allegation that they did not pay for *all* of it allows for the conclusion that Defendants paid for some of the overtime worked." *See Vilitchai v. Ametek Programmable Power, Inc.*, No. 15-cv-1957-L, 2017 WL 875595, at *3 (S.D. Cal. Mar. 6, 2017) (granting motion to remand and rejecting "Ametek's calculation [] based on the assumption of a 100% violation rate for the meal and rest break violations and a one-hour per week violation rate for the overtime violations" when the complaint alleged a "pattern and practice" of violation).

Accordingly, the Court concludes that On Q Financial has not satisfied its burden, by a preponderance of the evidence, in justifying its estimate of the total of unpaid overtime. The Court summarizes the parties' estimates in a chart appearing at the end of this Order.

### 2.		Meal and Rest Breaks (Claims Two and Three)

In the Complaint, Plaintiff alleges that "[a]s a pattern and practice, during the relevant time period set forth herein, [On Q Financial] failed to provide the requisite uninterrupted and timely meal and rest periods to Plaintiff and other class members." (Compl. ¶ 35). On Q Financial relies on the same assumptions underlying its calculation for the unpaid overtime calculation and estimates a 100% violation rate. (Opp. at 10–12). On Q Financial specifically notes that Plaintiff's Complaint permits assuming a 100% violation rate since it alleges that "[On Q Financial] knew or should have known that Plaintiff and other class members . . . did not receive *all* rest periods or payment of one additional hour of pay . . . ." (*Id.* at 11 (citing Compl. ¶ 28)). But this is a mischaracterization of paragraph 28 of the Complaint, which states as follows:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 18-8662-MWF (SSx)                    Date:  December 12, 2018
Title:     Carlos Koreisz v. On Q Financial, Inc.

> Plaintiff is informed and believes, and based thereon alleges, that [On Q Financial] knew or should have known that Plaintiff and other class members were entitled to receive all timely rest periods without interruption or payment of one additional hour of pay . . . when a rest period was missed, late or interrupted, and they did not receive all rest periods or payment of one additional hour of pay . . . when a rest period was missed.

(Compl. ¶ 28). Plaintiff, by alleging that they did not receive all rest periods, is not stating that all rest periods were in fact missed. Rather, the only inference that can be made is that *some* rest periods were missed.

Assuming a violation of ten meal periods and ten rest periods per pay period, On Q Financial arrives at a total between $1,091,614 (50% violation) and $2,183,229 (100% violation). (Opp. at 12). Plaintiff, on the other hand, assumes that one (20%) or two (40%) meal periods and rest periods were missed out of every five shifts (or one week of work) to arrive at a total between $268,555 to $537,110 for each claim. (Reply at 11).

For the same reasons discussed in connection with the unpaid overtime estimate, the Court concludes that On Q Financial has not satisfied its burden, by a preponderance of the evidence, in justifying its estimate of meal periods and rest periods violations.

### 3.    Unpaid Minimum Wage (Claim Four) and Liquidated Damages

In the Complaint, Plaintiff alleges that "[a]s a pattern and practice, during the relevant time period set forth herein, [On Q Financial] failed to pay Plaintiff and other class members at least minimum wages for all hours worked." (Compl. ¶ 36).

Based on Plaintiff's allegation that the class members were not paid for "minimum wages for all hours worked," it is unclear what the proper measure for minimum wages should be. On Q Financial argues that it can "reasonably assume that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 18-8662-MWF (SSx)                    Date:  December 12, 2018
Title:    Carlos Koreisz v. On Q Financial, Inc.

all employees were not paid for at least one hour of minimum wage per day (30 minutes for alleged unpaid meal periods, 20 minutes for two alleged unpaid rest breaks, and 10 minutes of other off-the-clock time)." (Opp. at 13). But this assumption is undermined for the same reasons already discussed. If On Q Financial's assumption were adopted, then the estimate of unpaid minimum wages would be double counting other categories. Assuming 10 hours of unpaid minimum wage per pay period and a minimum wage of $9 per hour, On Q Financial arrives at a total of $278,412 (for 50% violation) to $566,825 (for 100% violation). (*Id.* at 14).

Plaintiff offers a more reasonable assumption of one hour per week (or two hours per pay period) to arrive at a total of $145,602. (Reply at 12). Plaintiff does not specify if this is conservative estimate. Assuming it is, then the normal estimate of the total of unpaid minimum wage is $291,204.

Plaintiff also seeks "liquidated damages" under Labor Code section 1194.2. (Compl. ¶ 75). Section 1194.2 allows an employee to recover, in addition to any unpaid wages, a penalty equal to the amount of unpaid wages in an action under section 1194. Cal. Lab. Code § 1194.2(a). Here, the liquidated damages total is between $145,602 and $291,204.

### 4.  Inaccurate Wage Statement (Claim Six)

In the Complaint, Plaintiff alleges that "[a]s a pattern and practice, during the relevant time period set forth herein, [On Q Financial] failed to provide complete or accurate wage statements to Plaintiff and other class members." (Compl. ¶ 38).

On Q Financial argues that it "is reasonable in assuming a 100 percent violation rate" based upon the "broad alleged violations of failing to pay for all hours worked and failing to provide accurate wage statements." (Opp. at 15). On Q Financial, assuming a $50 penalty for the first wage statement and a $100 penalty for each subsequent wage statement, estimates that the total is between $89,950 (50% violation) and $179,900 (100% violation). (*Id.* at 16). Plaintiff disagrees and argues that the Complaint "never mentions how often wage statement violations occurred." (Reply at

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 18-8662-MWF (SSx)                    Date:  December 12, 2018
Title:    Carlos Koreisz v. On Q Financial, Inc.

13). Plaintiff reasons that a 25% violation rate is more appropriate, or $44,975. (*Id.*). Again, Plaintiff does not specify if this is a conservative or normal estimate, but even assuming it is a conservative estimate, then the total for wage statement violations is $89,950.

In contrast to other estimates, the Court concludes that it is reasonable to assume a 100% violation rate here. While Plaintiff argues that the Complaint does not state how often wage statement violations occurred, Plaintiff alleges that he and other class members were not paid "at least minimum wages for all hours worked." (*See* Compl. ¶ 38). This is also consistent with other assumptions related to unpaid overtime, unpaid rest and meal breaks, and unpaid minimum wage. It is therefore reasonable to assume that all wage statements would not accurately reflect Plaintiff and the class members' compensation.

### 5. Waiting Time Penalties (Claim Seven)

In the Complaint, Plaintiff alleges that "[a]s a pattern and practice, during the relevant time period set forth herein, [On Q Financial] failed to pay Plaintiff and other class members the wages owed to them upon discharge or resignation." (*Id.* ¶ 37).

Under § 203(a), an employee is entitled to "the same rate" of pay for each day that the wages remain unpaid, up to a maximum of 30 days. Cal. Lab. Code § 203(a). On Q Financial assumes that each terminated employee would be entitled to the maximum, 30-day penalty since there is "no limit or qualification on the alleged failure to pay for all hours worked or the alleged failure to pay all wages at termination." (Opp. at 16). On Q Financial estimates that the total for waiting time penalties is between $631,570 (50% violation) and $1,263,140 (100% violation). (*Id.* at 17).

In response, Plaintiff argues that whether it is a "100%, 60%, 40%, or 20% violation rate, such numbers must [] reflect the allegations in the [Complaint] or be backed up by admissible statistical evidence." (Reply at 15). Plaintiff assumes a 25% violation rate and estimates the total to be $315,785. (*Id.* at 16). Assuming it is a conservative estimate, then a normal estimate would total $631,570.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 18-8662-MWF (SSx)                     Date:  December 12, 2018
Title:      Carlos Koreisz v. On Q Financial, Inc.

While the Complaint does not allege any specific number of days that the terminated employees' wages were withheld, Plaintiff's allegations do not speak to the frequency of the alleged violation. Specifically, Plaintiff's allegations in the causes of action states that "[a]s a result of [On Q Financial's] alleged pattern and practice . . . [it] owe[s] waiting time penalties pursuant to Labor Code § 203." (*See* Compl. ¶ 91). On Q Financial simply fails to provide any evidence or reason why it is reasonable to assume that the full 30-day penalty is appropriate. As a result, On Q Financial has failed to satisfy its burden, by a preponderance of the evidence, in establishing the estimate of waiting time penalties. *See Amirian v. Umpqua Bank*, No. 17-cv-7574-FMO (FFMx), 2018 WL 3655666, at *5 (C.D. Cal. July 31, 2018) ("In the absence of evidence regarding . . . how many were not paid in a timely manner after termination . . . , the court has no basis from which to infer a 100% violation rate.").

### 6.     Attorneys' Fees

In the Complaint, Plaintiff seeks reasonable attorneys' fees for some, but not all, of his claims. (*See* Compl. at Prayer for Relief, ¶¶ 8, 15, 26, 47). Plaintiff therefore argues that On Q Financial's estimate of reasonable attorneys' fees in the Notice of Removal is inflated since the estimate is based upon 25% of the amount in controversy for all claims. (Mot. at 16–17). In response, On Q Financial argues that even when "limiting attorneys' fees solely to Plaintiff's overtime claim, minimum wage claim and wage statement claim," reasonable attorneys' fees total $1,665,798 (or 0.25 x ($5,926,467 + $566,825 + $179,900)). (Opp. at 18). A conservative estimate, or assuming a 50% violation rate, is $832,898. (*Id.*).

In response, Plaintiff argues that On Q Financial's estimate is unreliable because it is based upon "underlying impermissible speculation regarding [the] amount in controversy." (Reply at 16). Using Plaintiff's total estimates for the same claims ($1,208,496 + $291,204 + $89,950 = $1,589,650), the reasonable attorneys' fees should be $397,413 (or 0.25 x $1,589,650). (*See id.* at 17). The more conservative estimate is $148,352 (or 0.25 x ($402,832 + $145,602 + $44,975)). (*See id.*).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 18-8662-MWF (SSx)                    Date:  December 12, 2018
Title:    Carlos Koreisz v. On Q Financial, Inc.

For the same reasons already discussed, the Court concludes that On Q Financial has not satisfied its burden, by a preponderance of the evidence, in justifying its estimate of reasonable attorneys' fees.

### 7.   Summary

The chart below summarizes the amount in controversy for the claims discussed and attorneys' fees using the parties' various assumptions:

| Claims | Amount in Controversy Using Plaintiff's Estimates | | Amount in Controversy Using On Q Financial's Estimates | |
|---|---|---|---|---|
| | *Normal* | *Conservative* | *Normal* | *Conservative* |
| Unpaid Overtime | $1,208,496 | $402,832 | $5,926,467 | $2,963,233 |
| Meal and Rest Breaks | $1,074,220 | $537,110 | $2,183,229 | $1,091,614 |
| Minimum Wage | $291,204 | $145,602 | $566,825 | $278,412 |
| Liquidated Damages | $291,204 | $145,602 | $566,825 | $278,412 |
| Wage Statements | $89,950 | $44,975 | $179,900 | $89,950 |
| Waiting Time | $631,570 | $315,785 | $1,263,140 | $631,570 |
| Attorneys' Fees | $397,413 | $148,352 | $1,665,798 | $832,898 |
| **Total** | **$3,984,057** | **$1,740,258** | **$12,352,184** | **$6,166,089** |

As a preliminary matter, the Court notes that some of these figures are marginally different than what the parties presented in their briefs due to the parties' inadvertent miscalculations. For example, On Q Financial notes that "[t]he amount in controversy of Plaintiff's minimum wage claim is $5**66**,825," but in arriving at the total, uses "$5**5**6,825." (*See* Opp. at 14, 18). Similarly, Plaintiff notes that the "amount in controversy for inaccurate wage statements would be reduced from $179,**0**00 [when it should be $179,**9**00] to approximately **$89,500** ($179,000 x 25%) [when it should be **$44,750**]." (Reply at 13).

Regardless, the differences are marginal and do not alter the ultimate conclusion: Plaintiff's assumptions are more reasonable. And under either of his calculation, the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 18-8662-MWF (SSx)                    Date:  December 12, 2018
Title:     Carlos Koreisz v. On Q Financial, Inc.

amount in controversy falls short of the $5 million jurisdictional requirement set forth in CAFA.

As briefly discussed above, Plaintiff relies upon the average hourly wage (or $16.60) while On Q Financial relies upon the employee's regular rate of pay, presumably because that yields a higher amount in controversy.  Even if the Court were to give more weight to the regular rate of pay as opposed to the average hourly wage, On Q Financial has simply failed to establish, by a preponderance of the evidence, why a 50% or 100% violation rate is justified.  If the Court were to assume a 25% violation rate, then the total amount in controversy is $3,088,046 (0.25 x $12,352,184), well below CAFA's jurisdiction requirement.  As the district court noted in *Sanders*, "[i]t would be just as reasonable (if not more reasonable) to use a 25% violation rate here, which would drop the total amount in controversy here to less than $5 million." 2017 WL 5973566, at *4.

At the hearing, On Q Financial further argued that it only used data dating back to May 2015, as opposed to August 2014 (or four years preceding the filing of the Complaint as defined by Plaintiff's class period), and that the total would even be higher if the full period were used.  But the burden is on On Q Financial to establish, by a preponderance of the evidence, the amount in controversy and the reasonable violation rate (whether it is 25%, 50%, or 100%).  It has failed to do so.

At the hearing, On Q Financial argued that it had also removed the action on the basis of diversity jurisdiction.  (*See* NoR ¶ 9).  While there is no presumption against removal under CAFA, there is one under diversity jurisdiction.  And "[t]he strong presumption against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper, and that the court resolves all ambiguity in favor of remand to state court." *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009) (internal quotation marks and citation omitted).  As noted by the Court at the hearing, even assuming there is complete diversity, it is difficult to conclude that Plaintiff's claims for damages would exceed $75,000 on an individual basis.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No. CV 18-8662-MWF (SSx)          Date: December 12, 2018
Title:     Carlos Koreisz v. On Q Financial, Inc.

## III. CONCLUSION

For the reasons discussed above, the Motion is **GRANTED**. The Court **REMANDS** this action to the Ventura County Superior Court.

This Order shall constitute notice of entry of judgment pursuant to Federal Rule of Civil Procedure 58. The Court **ORDERS** the Clerk to treat this Order, and its entry on the docket, as an entry of judgment. Local Rule 58-6.

IT IS SO ORDERED.